IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| SHERWIN S. PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 324-074 |
| ) | |
| BRIAN CHAMBERS, Warden; ) | |
| COUNSELOR PERRY; MS. HALL, Medical ) | |
| Admin; DR. AYEDUN; NURSE DANIELS; ) | |
| OFC. GREEN; OFC. SCOTT; OFC. ) | |
| DANIELS; COUNSELOR STAFFORD; ) | |
| MEDICAL COLLEGE OF GA; DR. ) | |
| ZELLNER; DEPUTY WARDEN ) | |
| PROSSER; MS. SALEM; MS. BRAGG; ) | |
| OFFICER FORD; RON PANNIS; and ) | |
| J PAY CORP, ) | |
| ) | |
| Defendants.[1] ) | |

# O R D E R

Plaintiff, incarcerated at Johnson State Prison in Wrightsville, Georgia, filed this case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and has paid the $405.00 filing fee. However, notwithstanding any filing fee, the amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.[2] 28 U.S.C. § 1915A(b); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1] The Court **DIRECTS** the **CLERK** to update the spelling of Dr. Zellner's name, consistent with Plaintiff's amended complaint. (See doc. no. 7, p. 2, 31.)

[2] On February 6, 2025, Plaintiff filed a Motion for Clarity, requesting a status update regarding this case following the submission of his amended complaint. (Doc. no. 8.) This Order and the accompanying

## II.     SCREENING THE AMENDED COMPLAINT

### A.     BACKGROUND

Plaintiff filed his original complaint on October 16, 2024, which consisted of seventy-two pages of disjointed factual detail, conclusory legal arguments, and various attached exhibits concerning allegations against seventeen defendants over a period of several years. (See generally doc. no. 1; see also doc. no. 5, p. 2.)  In an Order dated December 4, 2024, the Court explained Plaintiff must submit an amended complaint and pointed out Plaintiff's complaint was a shotgun pleading, it was not clear whether all of his claims could be properly joined in one lawsuit, the Court was unable to discern who he intended to name as Defendants, and, to the extent he was seeking to bring claims on behalf of other inmates, such an attempt was improper.  (Doc. no. 5, pp. 2-3.)

In response, on December 27, 2024, Plaintiff submitted an amended complaint.  (Doc. no. 7.)  Plaintiff's amended complaint is split into two distinct sections, identified as "Claim I" and "Claim II."  (See generally id.)  Concerning Claim I, Plaintiff names the following Defendants in their individual and official capacities: (1) Warden Brian Chambers, (2) Deputy Warden Chabara Bragg, (3) Deputy Warden Prosser, (4) Officer Ruby Ford, (5) Officer Green, (6) Officer Daniels, (7) Officer Tredowski Scott, (8) Unit Manager Salem, (9) Counselor Perry, and (10) Counselor Stafford.  (Doc. no. 7, pp. 2-6.)  Concerning Claim II, Plaintiff names the following Defendants in their individual and official capacities: (1) Dr. Ayle Ayedun, (2) Dr. Zellner, (3) Ms. Hall, and (4) Nurse Daniels.  (Id. at 2, 31.)  The prior complaint named the following defendants who are omitted from the amended complaint:  (1) Medical College of

---

Report and Recommendation screening Plaintiff's amended complaint serve as Plaintiff's update as to the status of his case and thus, the motion is **MOOT**.  (Id.)

GA, (2) Ron Pannis, and (3) J Pay Corp.  (Compare doc. no. 1, with doc. no. 7.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

1. **Claim I**

While incarcerated at Johnson State Prison, Plaintiff was attacked and robbed by several gang-affiliated inmates on January 31, 2022, at 1:06 p.m., in dorm D-4.  (Doc. no. 7, pp. 8, 16.)  The inmates struck Plaintiff in the head and face while Plaintiff was in his wheelchair trying to open his locker.  (Id. at 16.)  The attackers took Plaintiff's belongings from his locker and continued beating him on the head and shoulders.  (Id.)  Plaintiff repeatedly banged on the dorm window and got Officer Ford's attention, but she declined to intervene in the continuing assault and robbery.  (Id. at 16.)  At 1:36 p.m., Officers Green, Scott, and Daniels entered dorm D-4, but they ignored Plaintiff.  (Id.)  Plaintiff tried to tell the responding officers what happened, but they only spoke to the gang members who attacked Plaintiff.  (Id.)

On February 8, 2022, Defendant Bragg investigated the incident by questioning Inmate Nick Sheppard.  (Id. at 19.)  Inmate Sheppard named all the inmates who attacked and robbed Plaintiff and named Inmate Thomas Gardner as the mastermind of the assault.  (Id.)  Defendant Bragg shared this information with members of the medical team following her investigation, and the next day, Plaintiff was summoned to Defendant Bragg's office where she shared everything Inmate Sheppard told her.  (Id.)  Despite all the information she learned, Defendant Bragg did nothing anything about the incident.  (Id.)  At the time, Defendant Bragg was the grievance coordinator, she denied Plaintiff's grievances about the incident in hopes she would become the Deputy Warden of Care and Treatment.  (Id.)  Plaintiff was moved to a different building for security reasons on February 10, 2022.  (Id. at 21.)

Plaintiff repeatedly asked Defendant Chambers to help find his property and punish the offenders but he deliberately refused to rectify the situation. (Id. at 17.) Defendant Chambers was baffled by the assault and robbery, but even after Inmate Sheppard's confession to Defendant Bragg, Defendant Chambers still did nothing to punish the offenders or find Plaintiff's property. (Id.) In fact, Defendant Chambers willfully covered up the incident. (Id.) In coordination with Defendants Prosser, Bragg, and Salem, Defendant Chambers filled out a "Second Statement Form," denying Plaintiff's grievances on March 4, 2022. (Id.) Warden Chambers and Deputy Warden Prosser continued to deny Plaintiff's grievances and failed to rule on an appeal filed on March 1, 2022. (Id. at 18.) Officers continued to cover up the incident by telling the grievance coordinator they knew nothing about Plaintiff's property. (Id. at 16.) Officer Ford even told Inmate Gardner, "[d]on't worry, Warden won't do nothing to you for robbing Perkins" on April 8, 2022. (Id.) Plaintiff continued to appeal his grievance denials and file new grievances without success. (Id. at 22.)

  **2. Claim II**

In the last four pages of Plaintiff's thirty-five-page complaint, Plaintiff raises "Claim II," which relates to a January 5, 2024, rupture of Plaintiff's penile implant. (Id at 31-35.) The rupture sent fluid into Plaintiff's scrotum, causing swelling, difficulty moving, sleeping, standing, and sitting. (Id. at 32.) One week later, Plaintiff called the medical unit about this issue but was refused treatment. (Id.) On February 3, 2024, Plaintiff received a sonogram of his bladder at Baldwin State Prison. (Id.) The following month, Plaintiff tried to obtain surgery at the recommendation of a physician and Defendant Nurse Daniels told Plaintiff surgery was scheduled, but no surgery took place. (Id.) After additional complaints to Defendant Hall and others, with no surgery scheduled through June, Plaintiff filed a grievance

4

on July 3, 2024, against Defendants Nurse Daniels, Hall, and Dr. Ayedun for failure to receive treatment. (Id.) Warden Watson failed to respond to the grievance. (Id.) In September 2024, Plaintiff had a virtual appointment with Doctor Barnes, who ordered an urgent sonogram and surgery to remove the implant. (Id.) Plaintiff received the sonogram at Baldwin State Prison, but no surgery. (Id.) Following Doctor Ayedun's resignation, Doctor Zellner has still failed to provide Plaintiff with the necessary surgery. (Id. at 33.) As a result of Defendants' failures to schedule the surgery to remove Plaintiff's implant, his pain and symptoms have worsened, will continue to get worsen, and could result in his death. (Id.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated viable claims for medical deliberate indifference against Defendants Dr. Zellner, Ms. Hall, and Dr. Ayedun. See Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*); Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (*per curiam*) (collecting cases and explaining a defendant who provides "medical care that is so cursory as to amount to no treatment at all" or "delays necessary treatment for non-medical reasons" may exhibit deliberate indifference). In a companion Report and Recommendation, the Court recommends dismissal of all other Defendants.

### III.   INSTRUCTIONS

**IT IS HEREBY ORDERED** service of process shall be effected on Defendants Zellner, Hall, and Ayedun. The United States Marshal shall mail a copy of the amended complaint, (doc. no. 7), and this Order by first-class mail and request that Defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant

must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants Zellner, Hall, and Ayedun to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a

motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 4th day of March, 2025, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA